**KARRAS, A Minor, Appellant,**

**v.**

**NATIONWIDE LIFE INSURANCE COMPANY, Appellee.**

[Cite as *Karras v. Nationwide Life Ins. Co.* (1989), 65 Ohio App. 17.]

No. 11488.

Court of Appeals of Ohio,
Montgomery County.

Decided Oct. 6, 1989.

*Pickrel, Schaeffer & Ebeling* and *William L. Havemann*, for appellant. *Altick & Corwin* and *Francis S. McDaniel*, for appellee.

WOLFF, Presiding Judge.

James N. Karras appeals from a summary judgment granted by the Montgomery County Court of Common Pleas to Nationwide Life Insurance Company.

James' father George applied for life insurance through Nationwide, designating James as beneficiary.

Nationwide never issued a policy, although Nationwide did issue a temporary insurance receipt to George which stated in part:

"Temporary insurance is for the amount shown in Question 4a of this application which has the same date and number as this receipt. It is defined below.

"Temporary insurance for any person proposed for coverage will be in force on the date of this receipt, subject to the terms of the policy applied for in 4a. It will end on the earliest of:

"1. The date a policy is issued. (The policy will replace the temporary insurance.)

"2. The date the Company returns the premium deposit and mails a written notice to the Owner that said insurance has ended for the Proposed Insured(s).

"3. Seventy days after its effective date; unless it has been earlier replaced or ended as noted in 1 and 2. *Material misrepresentations in this application may cause the Company to deny liability under the agreement.* In such cases the Company's only liability is for refund of the payment made." (Emphasis added.)

George Karras died and a claim was made under the temporary insurance receipt. Nationwide denied the claim due to "material misrepresentation."

After James began suit, Nationwide moved for summary judgment, on the basis of George's material misrepresentations in his application.

James responded by contending that R.C. 3911.06 applied to the situation and, assuming the application of R.C. 3911.06, argued that material issues of fact existed.

The trial court held that R.C. 3911.06, by its very terms, did not apply to the situation, and that George's material misrepresentations relieved Nationwide of liability for benefits pursuant to the language of the temporary insurance receipt.

The single assignment of error contends:

"The trial court erred in ruling that the provisions of Section 3911.06 of the Ohio Revised Code do not apply to a temporary or conditional insurance receipt."

R.C. 3911.06 provides:

"No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover *upon any policy issued thereon,* or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer *the policy would not have been issued,* and that the agent or company had no knowledge of the falsity or fraud of such answer." (Emphasis added.)

James concedes that there are material issues of fact *only* if R.C. 3911.06 applies to this situation.

The trial court correctly held that it did not. The statute unequivocally pertains only to those situations where a policy has been issued.

There are compelling reasons, ably discussed in Nationwide's brief, why an insurance company should not be subject to the rigor of R.C. 3911.06 as to insurance agreements contained in a temporary insurance receipt.

In short, in determining whether to extend temporary coverage, an insurer should be able to rely on the information furnished by the proposed insured to a greater extent than after the insurer has issued a policy, which only occurs after the insurer has had the opportunity to investigate its potential risk on the basis of information from sources other than just the proposed insured.

*Jones v. John Hancock Mut. Life Ins. Co.* (S.D.Mich.1968), 20 Ohio Misc. 227, 48 O.O.2d 284, 289 F.Supp. 930, affirmed (C.A.6, 1969), 416 F.2d 829, does not actually hold, as James contends, that R.C. 3911.06 applies to temporary insurance. *Jones* involved facts far more favorable to the beneficiary of the proposed insured than the facts of this case. The insurer claimed that the deceased had misrepresented his flying hours. The evidence established that the deceased had estimated his flying hours with the knowledge of the

insurance agent that he was merely estimating, and that the deceased agreed to pay a higher premium than that quoted by the agent if required to do so by the insurer.

The district court in *Jones* stated:

"Mr. Jones did not intend to attempt to willfully or fraudulently understate his flying hours. If a policy had been issued based on his estimates it is clear under Ohio law that the defendant would not be able to deny coverage on this ground." *Id.*, 20 Ohio Misc. at 242, 48 O.O.2d at 292, 289 F.Supp. at 939.

After quoting R.C. 3911.06, the trial court concluded:

"We see no reason why a stricter test should be applied where an applicant agrees to pay a higher premium if the company determines it is necessary.

"Under such circumstances the discrepancy with respect to Mr. Jones' flying hours was immaterial and is not a defense to this action." *Id.*, 20 Ohio Misc. at 242–243, 48 O.O.2d at 293, 289 F.Supp. at 939–940.

Even if *Jones* did hold, as James contends, that R.C. 3911.06 applies to temporary insurance, we are, of course, not bound by *Jones*. Nothing in the facts of the case now before us remotely suggests that we should ignore the clear language of R.C. 3911.06 which confines its application to situations where a policy has been issued.

The assignment of error will be overruled. The judgment will be affirmed.

*Judgment affirmed.*

BROGAN, J., concurs.

GRADY, J., dissents.

GRADY, Judge, dissenting.

The summary judgment for appellee Nationwide should be reversed because the trial court followed the wrong standard in adjudicating the issues of law raised by appellee's motion for summary judgment. The trial court followed the "material misrepresentation" standard of the insurance contract. Instead, it should have applied, and was obligated to apply, the standard in R.C. 3911.06: clear proof of willful falsehood and fraud. The source of the trial court's error is its determination that the "temporary insurance" contract between Karras and Nationwide is not a "policy" of insurance covered by R.C. 3911.06.

It is generally recognized that the business of insurance is one affected with a public interest, and that it is a proper subject of statutory regulation and control by the state. Those statutes must be *liberally construed* to effect the purposes to be served and prevent and correct abuses growing out of the

conduct of such business. See 57 Ohio Jurisprudence 3d (1985), Insurance, Sections 3, 4.

"The insurer has the right to contract with the insured as to what risks it will or will not assume, as long as neither statute law nor public policy is violated thereby." 2 Couch on Insurance 2d (1984 Rev. Ed.) 278, Section 15:48. When the terms of a contract conflict with a statute, the statute will prevail. *Spencer v. Cleveland Athletic Assn. Co.* (M.C.1934), 32 Ohio N.P. (N.S.) 369. In construing that form of conflict, the construction will be adopted which makes the contract conform to the requirements of the law, rather than that which will impute to the parties an intent to disregard or violate the law. *Gillespie v. Security Mut. Life Ins. Co.* (1924), 18 Ohio App. 164.

Insurance is, first and foremost, a contract. *State, ex rel. Sheets, v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* (1903), 68 Ohio St. 9, 67 N.E. 93. A "policy" is but the written form of the insurance contract. *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537. "The term 'policy' is general and may be used to describe the contract regardless of the nature of the risk insured against." (Footnote omitted.) 1 Couch on Insurance 2d (1984 Rev. Ed.) 302, Section 3:1.

The practice of issuing "temporary insurance" through a "binder" or receipt on application has grown to be a common practice. See 12(A) Appleman, Insurance Law and Practice (1981 Rev. Ed.) 187, Section 7237. Binders and conditional receipts serve as the insurer's acknowledgement of its contractual obligations and are contracts of temporary insurance. 1 Couch, *supra,* at 303, Section 3:2. They constitute contracts of insurance on which the company is fully liable for any scheduled loss occurring during the period covered by the contract. *Duncan v. John Hancock Mut. Life Ins. Co.* (1941), 137 Ohio St. 441, 31 N.E.2d 88.

"Generally speaking, a contract of temporary insurance is subject to the same rules of construction as any ordinary contract of insurance. As in the case of any other contract, the construction of a binding receipt, an application, or memorandum which is relied upon as the basis of temporary insurance protection is a matter within the province of the court and *statutory provisions will be read into binders just as they will be read into regular policies.*" (Emphasis added and footnotes omitted.) 2 Couch, *supra,* at 66–67, Section 14:35. Further, as binders are in the law contracts of adhesion between parties not equally situated, a term in a temporary receipt should be *strictly construed* against the insurer which selected it. *Jones v. John Hancock Mut. Life Ins. Co.* (W.D.Mich.1968), 20 Ohio Misc. 227, 48 O.O.2d 284, 289 F.Supp. 930, affirmed (C.A. 6, 1969), 416 F.2d 829.

Having reviewed the foregoing principles, it must be determined whether R.C. 3911.06 applies to the insurance contract between the parties.

The statute employs the term "policy" but does not define the term. Appellee argues that its agreement is exempt from the statute because it is temporary. But nothing in the statute or the term "policy" suggests that its coverage is inapplicable on the basis of time or period of coverage. Nothing in the statute, or in the state's comprehensive regulation of insurance, suggests that a "binder," or a "temporary insurance receipt" in this case, is anything other than a policy, albeit of a short and limited duration. The state has not chosen to define or exempt a temporary contract of insurance from the coverage of its statute. In an area of intense regulation, it should not be supposed that the General Assembly intended to allow an exception for which it has made no provision.

The sole test for coverage under the statute is whether the agreement of the parties is a contract of insurance. It is a contract of insurance, and therefore a "policy," if it contains the requisites of a contract of insurance: a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay him or his assignee a certain or ascertainable sum of money on a specified contingency. *State, ex rel Duffy, v. Western Auto Supply* (1938), 134 Ohio St. 163, 11 O.O. 583, 16 N.E.2d 256; *State, ex rel Herbert, v. Standard Oil Co.* (1941), 138 Ohio St. 376, 20 O.O. 460, 35 N.E.2d 437. The agreement meets those requisites and is, therefore, a "policy." Appellee Nationwide may call its agreement by another name, but it may not thereby escape the intent of the General Assembly regarding regulation of such agreements enacted in R.C. 3911.06.

Appellee Nationwide argues that it should be allowed to limit its obligations arising from an application for insurance. Certainly, its agent cannot at the time of application determine whether the applicant's health condition would exclude him from coverage, and he cannot adequately investigate the truth or falsity of the applicant's representations. Additional time for consideration and investigation is necessary. Those arguments are valid, but they do not support the exemption from R.C. 3911.06 claimed by appellee, for several reasons.

First, and most importantly, the state's regulation does not allow the benefit claimed by Nationwide. The state has chosen to require that any denial of coverage for misrepresentation be upon a showing that it was willfully false, fraudulent, material, and waived a condition for coverage. Nationwide would limit that to the lesser burden of "material misrepresentation." It may not do that absent a statutory exception, which it cannot create through artificial distinctions in terminology of the policy it authors.

Second, an insurer's reasonable need for a *quantity* of time to consider and investigate has no relationship to the *quality* of applicant misconduct required by the statute to deny coverage. Fraud is always a bar to pay-out, whether interposed during temporary or permanent coverage periods. Nationwide has adopted protective measures adequate to avoid prejudice that may arise in the short-term because of uninvestigated applications; it has limited its coverage periods to a definite, short term, and it has assumed no obligation to extend permanent coverage. Those measures offer all the protection necessary to avoid prejudice because of *quantitative* limitations of time. The insurer may not also seek the *qualitative* protections of a lesser burden of applicant misconduct, particularly when the statute has defined that burden otherwise. If Nationwide believes it will be prejudiced without that qualitative distinction, it may simply elect to offer no coverage plans without investigation.

Third, the statute imposes no undue burden on an insurer who writes a contract for temporary coverage. It is granted that the applicant obtains the benefit of immediate protection. But it also carries important benefits for the insurer.

" 'The issuance of these binding receipts effectively does away with the disadvantage threatening the insurer. The applicant to whom the binding receipt is issued feels contractually obligated to perform, and it serves to give the insurer the use of premium money at the earliest date possible. It further offers a selling point of which no agent fails to make the utmost in his talks with prospective customers.' " 12A Appleman, Insurance Law and Practice (1981 Rev. Ed.), at 231, Section 7241, quoting *Service v. Pyramid Life Ins. Co.* (1968), 201 Kan. 196, 210, 440 P.2d 944, 956. An insurer that writes a policy of temporary coverage does so voluntarily and in order to improve his competitive and financial position. Having sought that advantage voluntarily, it cannot claim that the law imposes an undue or inequitable burden.

I see no reason in the facts of the case or the requirements of law to allow Nationwide an exemption from the requirements of R.C. 3911.06. Construing the contract to conform to the law, and construing the contract strictly against its author, Nationwide, there is no basis for the exemption from the statute. The trial court erred in granting summary judgment on the basis recited in the policy rather than the basis imposed by the statute.